FILED

◼___...O'clock & ........ min.____M

## IN THE UNITED STATES BANKRUPTCY COURT

APR 0 6 2006

## FOR THE DISTRICT OF SOUTH CAROLINA

United States Bankruptcy Court
Columbia, South Carolina (19)

| | |
|---|---|
| IN RE:<br><br>Richard Allen Cushman and Sue Martin Cushman,<br><br>Debtors. | C/A No. 05-44954-JW<br><br>Chapter 13 |
| IN RE:<br><br>Elisha Ingram, Jr.,<br><br>Debtor. | C/A No. 05-44956-JW<br><br>Chapter 13 |
| IN RE:<br><br>Nancy Dianne Lee,<br><br>Debtor. | C/A No. 05-45089-JW<br><br>Chapter 13 |
| IN RE:<br><br>Robert Eugene Losley and Ann Marie Losley,<br><br>Debtors. | C/A No. 05-45146-JW<br><br>Chapter 13 |
| IN RE:<br><br>Henry Anthony Pryor and Judean Vereen Pryor,<br><br>Debtors. | C/A No. 05-45315-JW<br><br>Chapter 13 |

ENTERED
APR 6 2006
K.R.W.

## ORDER RESOLVING OBJECTIONS OF TRUSTEE TO CONFIRMATION

These matters come before the Court upon objections to plan confirmation filed by

Chapter 13 Trustee James Wyman ("Trustee"). Pursuant to Fed. R. Bankr. P. 3015 and SC LBR

3015-1, the Court makes the following Findings of Fact and Conclusions of Law.[1]

---

[1]     To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

## FINDINGS OF FACT

1.      Trustee is the Chapter 13 Trustee for Richard Allen Cushman and Sue Martin Cushman (the "Cushmans"), Elisha Ingram, Jr. ("Ingram"), Nancy Dianne Lee ("Lee"), Robert Eugene Losley and Ann Marie Losley (the "Losleys"), and Henry Anthony Pryor and Judean Vereen Pryor (the "Pryors") (collectively referred to as the "Debtors").

2.      Under each of Debtors' Statement of Current Monthly Income, each Debtor is above the median income for the State of South Carolina.

3.      Trustee objected to the confirmation of each Debtors' proposed plans on grounds that 11 U.S.C. § 1325(b)[2] requires Debtors to commit their disposable income to a plan that is 60 months in duration.

### Richard Allen Cushman and Sue Martin Cushman

4.      The Cushmans filed a petition for relief under Chapter 13 on October 31, 2005.

5.      On November 9, 2005, the Cushmans submitted a proposed plan ("Cushman Plan"). The Cushman Plan proposes to pay $997.00 per month to Trustee for a period of 57 months. Of this sum paid to the Chapter 13 Trustee, the Cushmans propose that $524.00 per month be paid to cure an arrearage, estimated at $25,131.86, owed to their mortgage creditor; $157.00 per month be paid to a creditor holding a security interest in their boat; and that $147.00 per month be paid to a creditor holding a security interest in their vehicle. The remaining $169.00 per month would be used to pay the Cushmans' attorneys' fees of $769.00; the claim of the Internal Revenue Service, estimated at $3,000.00; the Trustee's fee, and the Cushmans' general unsecured creditors, who are owed an estimated $25,375.00.

6.      The Cushmans propose to pay general unsecured creditors one (1%) percent of their allowed claims and receive a discharge of their debts; however, if all payments were made

---

[2] Future references to the Bankruptcy Code shall be made by section number only.

2

over a 57 month period, the Cushman Plan would appear to pay all scheduled non-priority unsecured creditors approximately $9,000.00.

7.      According to the Cushmans' Schedules A, B, and C, they have an estimated $12,559.00 in equity in real and personal property, after their exemptions and payment of outstanding encumbrances, from which to pay unsecured creditors.[3]

8.      The Cushmans filed their first Statement of Current Monthly Income ("First CMI"),[4] on November 9, 2005. According to the First CMI, the Cushmans have $1,679.70 in monthly disposable income from which to pay unsecured creditors. They amended the First CMI on February 6, 2006. The Amended Statement of Current Monthly Income ("Second CMI") shows the Cushmans have $57.62 in monthly disposable income from which to pay unsecured creditors.[5]

9.      According to the Cushmans' Schedule I, they currently have gross monthly income of $6,530.79; however, their Second CMI indicates that they averaged a monthly gross income of $8,015.56 for the six months preceding the petition date. The Cushmans' Schedule I indicates that Mrs. Cushman's income varies because she is paid on a commission basis.

10.      The Cushman Plan appears patently unfeasible given that there is more than a $400.00 difference between the Cushmans' proposed plan payment and their actual disposable income. The infeasibility of the Cushman Plan is further indicated by the Trustee's Motion to Dismiss the Cushmans' case for non-payment, filed March 8, 2006.

---

[3] It appears that there is $1,000.00 in nonexempt equity in the Cushmans' real property and $11,559.00 in nonexempt equity in their household goods, clothing, boat, and guns.

[4] The Statement of Current Monthly Income is also Form B22C of the Official Forms.

[5] The discrepancy appears to have been caused by the Cushmans use of local standards for housing and transportation costs in their First CMI and their exclusion of their actual mortgage payment, payment necessary to cure their mortgage arrearage, and their payments to other secured creditors. At the hearing on the Objection, the Trustee did not challenge the accuracy of the Cushmans' disposable income as it appears in their Second CMI.

3

11.    The Cushmans' Schedule J indicates that they have a net monthly disposable income of $581.67 after taxes and their actual living expenses.

### Elisha Ingram, Jr.

12.    Ingram filed a petition for relief under Chapter 13 on November 1, 2005.

13.    On November 3, 2005, Ingram submitted a proposed plan ("Ingram Plan"). The Ingram Plan proposes to pay $660.00 per month to the Trustee for a period of 48 months. Of this sum paid to the Trustee, Ingram proposes that $459.00 per month be paid to cure a mortgage arrearage, estimated at $21,39150; $62.00 per month be paid to a creditor holding a security interest in his vehicle; and that $15.00 per month be paid to a creditor holding a security interest furniture. The remaining sum would be used to pay Ingram's attorneys' fees of $2,534.00; the Trustee's fee; and Ingram's general unsecured creditors, who are owed an estimated $30,797.00.

14.    Ingram proposes to pay general unsecured creditors one (1%) percent of their allowed claims and receive a discharge of his debts; however, if all payments were made over a 48 month period, the Ingram Plan would appear to pay all scheduled non-priority unsecured creditors approximately $3,500.00.

15.    According to Ingram's Schedules A, B, and C, he has approximately $514.00 in equity in personal property, after his exemptions and payment of outstanding encumbrances, from which to pay unsecured creditors.

16.    On November 1, 2005, Ingram filed his Statement of Current Monthly Income. According to this form, Ingram has a deficit of $502.11 per month, after his living expenses and payments to his secured creditors.

17.     According to Ingram's Schedule I, he currently has gross monthly income of $3,405.35. This figure is identical to Ingram's average income over the six-month period prior to the petition date, as reflected in his Statement of Current Monthly Income.

18.     Ingram's Schedule J indicates that he has a net monthly disposable income of $650.06 after taxes and actual living expenses.

### Nancy Dianne Lee

19.     Lee filed a petition for relief under Chapter 13 on November 17, 2005.

20.     On November 17, 2005, Lee submitted a proposed plan ("Lee Plan"). The Lee Plan proposes to pay $300.00 per month to the Trustee for a period of 41 months. Of this sum paid to the Trustee, Lee proposes to value the claim of the creditor holding a security interest in her vehicle at $7,000.00 and pay this creditor $217.00 per month. The remaining $83.00 per month would be used to pay Lee's attorneys' fees of $2,734.00; the Trustee's fee; and Lee's general unsecured creditors, who are owed an estimated $27,902.00.

21.     Lee proposes to pay general unsecured creditors one (1%) percent of their allowed claims and receive a discharge of her debts; however, if all payments were made over a 41 month period, the Lee Plan would appear to pay all scheduled non-priority unsecured creditors approximately $1,500.00.

22.     According to Lee's Schedules A, B, and C, she has approximately $6,703.00 in equity in real and personal property, after her exemptions and payment of outstanding encumbrances, from which to pay unsecured creditors.

23.     On November 17, 2005, Lee filed her Statement of Current Monthly Income. According to this form, Lee has $80.80 per month from which to pay unsecured creditors.

24.    According to Lee's Schedule I, she currently has gross monthly income of $3,035.08. However, Lee's Statement of Current Monthly Income indicates that over the six-month period prior to the petition date, Lee averaged an income of $3,756.06 per month.

25.    Lee's Schedule J indicates that she has net monthly disposable income of $301.15 after taxes and actual living expenses.

### Robert Eugene Losley and Ann Marie Losley

26.    The Losleys filed a petition for relief under Chapter 13 on November 28, 2005.

27.    On November 28, 2005, the Losleys submitted a proposed plan ("Losley Plan"). The Losley Plan proposes to pay $350.00 per month to the Trustee for a period of 36 months. Of this sum paid to the Trustee, the Losleys propose to value the claim of the creditor holding a security interest in her vehicle at $3,500.00 and pay this creditor $109.00 per month. The Losleys also propose to pay $130.00 per month to cure an arrearage owed to the creditor holding a security interest in their home and $20.00 per month to another creditor having a lien on their home. The remaining sum would be used to pay the Losleys' attorneys' fees of $2,734.00; the Trustee's fee; and the Losleys' general unsecured creditors, who are owed an estimated $13,718.00.

28.    The Losleys propose to pay general unsecured creditors three (3%) percent of their allowed claims and receive a discharge of their debts; however, if all payments were made over a 36 month period, the Losley Plan would appear to pay all scheduled non-priority unsecured creditors approximately $1,500.00.

29.    According to the Losleys' Schedules A, B, and C, they have approximately $310.00 in equity in personal property, after their exemptions and payment of outstanding encumbrances, from which to pay unsecured creditors.

6

30.    On November 28, 2005, the Losleys filed their Statement of Current Monthly Income. According to this form, the Losleys have a budget deficit of $739.47 per month, after their living expenses and payment of their secured creditors.

31.    According to the Losleys' Schedule I, they currently have gross monthly income of $5,186.06. This figure is identical to the Losleys' average income over the six-month period prior to the petition date, as reflected in their Statement of Current Monthly Income.

32.    The Losleys' Schedule J indicates that they have net monthly disposable income of $357.33 after taxes and actual living expenses.

### Henry Anthony Pryor and Judean Vereen Pryor

33.    The Pryors filed a petition for relief under Chapter 13 on December 9, 2005.

34.    On December 12, 2005, the Pryors submitted a proposed plan ("Pryor Plan"). The Pryor Plan proposes to pay $660.00 per month to the Trustee for a period of 54 months. Of this sum paid to the Trustee, the Pryors propose to value the claim of the creditor holding a security interest in her vehicle at $19,800.00 and pay this creditor $429.00 per month. The Pryors also propose to pay $64.00 per month to cure an arrearage owed to the creditor holding a security interest in their home and $47.00 per month to another creditor having a lien on their storage shed. The remaining sum would be used to pay the Pryors' attorneys' fees of $1,769.00; the Trustee's fee; and the Pryors' general unsecured creditors, who are owed an estimated $23,575.00.

35.    The Pryors propose to pay general unsecured creditors one (1%) percent of their allowed claims and receive a discharge of their debts; however, if all payments were made over a 54 month period, the Pryor Plan would appear to pay non-priority unsecured creditors approximately $7,300.00.

36.     According to the Pryors' Schedules A, B, and C, they have approximately

$25,191.00 in equity in real and personal property, after their exemptions and payment of

outstanding encumbrances, from which to pay unsecured creditors.

37.     On December 12, 2005, the Pryors filed their Statement of Current Monthly

Income. According to this form, the Pryors have a budget deficit of $64.03 per month, after their

living expenses and payment of their secured creditors.

38.     According to the Pryors' Schedule I, they currently have gross monthly income of

$4,822.66. However, the Pryors' Statement of Current Monthly Income indicates that, over the

six-month period prior to the petition date, the Pryors averaged an income of $4,722.40 per

month.

39.     The Pryors' Schedule J indicates that they have net monthly disposable income of

$684.95 after taxes and actual living expenses.

## CONCLUSIONS OF LAW

The primary issue raised by the parties in these Reform Act cases is the interpretation of

§ 1325(b) and whether it requires Debtors to fund a plan for a full term of 60 months.  Section

1325(b)(1)(B) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the
> confirmation of the plan, then the court may not approve the plan unless, as of
> the effective date of the plan …
> (B) the plan provides that all of the debtor's *projected disposable income* to be
> received in the *applicable commitment period* beginning on the date that the
> first payment is due under the plan will be applied to make payments to
> unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

The "applicable commitment period" is defined by § 1325(b)(4) as no less than five years

for a debtor with above median income or three years for a debtor with below median income,

8

unless debtor's plan proposes to pay all allowed unsecured claims in full. "Disposable income" is defined in §1325(b)(2) as a debtor's "current monthly income," which in turn is defined in § 101(10A) as a debtor's average monthly income, from all sources without regard to whether income is taxable, received by debtor during the six months period prior to the petition date. Both the Trustee and Debtors assert that a plain reading of § 1325(b) supports their respective positions as to the length and required payment in a Chapter 13 plan.

Debtors argue that the "applicable commitment period" is to be construed in terms of a multiplier yielding the amount of income Debtors must devote to their plans and not the length of time that Debtors must perform in their plans. Under Debtors' argument, Debtors would use their disposable income, determined by line 58 of their Statement of Current Monthly Income, and multiply that number by 60, the number of months for Debtors' applicable commitment period pursuant to § 1325(b)(4). This formula yields an amount that Debtors must pay to general unsecured creditors, regardless of their actual disposable income. Under Debtors' approach, the proposal of a plan which pays this amount would defeat the Trustee's objections to confirmation pursuant to § 1325(b)(1)(B). For example, in the Cushmans' case, that formula yields a product of $3,457.30 ($57.62 x 60). In the case of Ingram, the Losleys, and the Pryors, there would be no amount owed to general unsecured creditors because each of these debtors have a budget deficit on their Statement of Current Monthly Income and thus there would be nothing owed to unsecured creditors. Debtors argue that if they propose a plan which pays whatever sum this formula yields to general unsecured creditors, then the plan is not subject to objection by the Trustee under § 1325(b) and that they may pay this sum in less than 60 months, thus entitling them to a discharge in a quicker time frame.[6]

---

[6] The Court notes that the record of these cases is confusing in that Debtors each propose to pay more to general unsecured creditors than these creditors would receive under Debtors' formula approach. Neither Trustee nor

Debtors each propose a plan that is less than 60 months. Trustee takes the position that § 1325(b)(1)(B) and (b)(4) require Debtors to fund a plan for 60 months. Trustee would have the Court construe § 1325(b)(4) as a mandatory time frame in which all such debtors must be in their Chapter 13 plan, if Trustee objects and if a debtor is paying less than one hundred (100%) percent of the allowed claims of unsecured creditors. If Debtors were able to pay unsecured creditors the amount required by Debtors' formula approach in less than 60 months, Trustee would have Debtors commit their disposable income to the plan for the remainder of the 60 month period.

The Court interprets § 1325(b)(4) to require Debtors to perform under a plan for 60 months. Section 1325(b)(4) defines the applicable commitment period for a debtor, whose income is above median income, as not less than five years. 11 U.S.C. § 1325(b)(4)(A)(ii). Pursuant to § 1325(b)(1)(B), Debtors must commit their projected disposable income "to be received in the applicable commitment period" in order to defeat the Trustee's objection to confirmation. This language clearly indicates that Debtors must perform in their plan of reorganization for this minimum period of time, if the Trustee objects to confirmation. The Bankruptcy Code never refers to the "applicable commitment period" as a multiplier or anything other than that which it purports to be, i.e. a length of time for a debtor to perform a plan. See In re Lampman, C/A No. 04-04339F, ___ B.R. ___, 2006 WL 167832 *2 (Bankr. N.D. Iowa Jan. 17, 2006) (noting that under the revised Bankruptcy Code § 1325(b)(4) would require a debtor below the median income to be in a plan for three years if trustee objected to confirmation). In

counsel for Debtors addressed this issue at the hearing on Trustee's objections. Debtors' formula approach necessarily raises issues as to the amount owed general unsecured creditors, which in turn raises issues as to whether the Statement of Current Monthly Income is the proper mechanism for determining a debtor's "projected disposable income," whether Debtors' formula approach creates a plan proposed in good faith, and whether the formula is mandatory if it yields a plan that is infeasible or that does not meet the liquidation test. The Court understands that the parties do not wish for the Court to address the issue of whether the formula approach creates a required amount owed to general unsecured creditors; and therefore, the Court will only address whether § 1325(b) mandates a certain length of a Chapter 13 plan if there is an objection.

10

the only applicable case law identified by this Court to date, the bankruptcy court in the Western District of Louisiana confronted and rejected an identical argument by debtors in that District and ruled in an unpublished order that § 1325(b)(4) requires those debtors above median income to be in a plan for 60 months if the trustee objects to confirmation. See In re McCrell, C/A No. 05BK-34034 (Bankr. W.D. La. Mar. 9, 2006).

The legislative history of Chapter 13 and of § 1325(b) also supports this interpretation of § 1325(b)(1)(B). The purpose of Chapter 13 has always been to enable debtors to "develop and perform under a plan for the repayment for the repayment of his debts *over an extended period*." H.R. Rep No. 95-595, at 118 (1977) (emphasis added). It appears that the sense of Congress, in amending the Bankruptcy Code, was that debtors were abusing the system and paying creditors less than what they are able to pay. Congress amended the Bankruptcy Code by reducing the availability of Chapter 7 and requiring a mandatory repayment period in a Chapter 13. See H.R. Rep. No. 109-31(I), at 5 (2005). Section 1325(b) was amended by § 318 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. That specific section is captioned as "Chapter 13 Plans To Have a 5-Year Duration in Certain Cases" and the House Report regarding this section speaks in terms of the duration of a Chapter 13 plan, not in terms of a formula for the amount of a plan repayment. See S. 256, 109th Cong. § 318 (2005); H.R. Rep. No. 109-31(I), at 79 (2005). Therefore the Court finds that both the intent of Congress and the plain language of § 1325(b) mandate a five year duration of Debtors' Chapter 13 case, when faced with an objection by the Trustee or a creditor with an allowed unsecured claim.

## CONCLUSION

For the reasons set forth herein, the Trustee's Objection is sustained.  The Court denies

confirmation of Debtors' proposed plans as § 1325(b)(1)(B) requires Debtors to each propose a

plan that is 60 months in duration.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
April 6, 2006